21-1498 Thank you. Thank you. May it please the court. My name is Diana Thompson and I represent the appellants. I'd like to reserve two minutes of my time for rebuttal. Okay. This case is about a religious dispute between a priest and his former church over what the church said about him regarding his unsuccessful campaign to become a bishop. He's asking for simple remedies for religious harms, but structural first amendment principles prevent courts from interfering in internal church discipline and governance. That's because the religion clauses not only protect the church and the state from the entanglement that comes from adjudicating the claim itself. This court has- The immediate question is appellate jurisdiction. Why do we have appellate jurisdiction in your view? That's right. It's a threshold issue to determine whether the protection applies before the church state interests are irreparably harmed through discovery and trial. So this court has frequently and recently applied the Cohen factors to determine whether an interlocutory order is The parties agree that church autonomy defenses may be accepted for interlocutory appeal if the defense includes immunity from discovery. That's what the Supreme Court said in Mitchell and Barron's. If it's, if the immunity provides a defense against the burden of litigation. In the 1983 context, we, you know, we have a lot more qualified immunity cases under 1983. There, there isn't an interlocutory appeal if, if there are factual disputes, I mean, it has to be a purely a matter of law. So how, I mean, if you assume all the facts as alleged by the plaintiff, I mean, is it really something that we can hear now or aren't there, aren't there factual disputes that preclude an interlocutory appeal? Yes. Your honor, the district court did not decide any factual disputes. They're even taking the, all of the claims brought on the complaint. This is a religion case. This is a religion case from the top down. Um, the district court did not make any findings of fact. And, but, but for example, um, he's accused of forgery. He forged a letter that, I mean, if, if, why can't that be resolved on neutral principles, um, independently of, um, uh, the religious issues. In other words, whether he forged a signature on the letter or not, does it make him, uh, qualified, uh, to be the bishop? Uh, maybe he, he shouldn't be the bishop for other reasons, but can't the question of whether he forged a signature be resolved with, without delving into all of the religious aspects. The problem with the signature, your honor, is there's a few problems. First, it's not dispositive because it doesn't answer the question of whether the letters alleged to be forged were authorized by the Metropolitan. These were letters that were sent from the Metropolitan to Moscow. Uh, that's what the clergy letter, the September 3rd clergy letter was addressing when it said that the letters were drawn up in an irregular manner. They did not mention the signature. This is, this is priests who are looking at these letters and saying, we know what it looks like when the church appoints a bishop, and this is not it. Is he asking to be reinstated? He's not asking for damages, right? So just to follow up on just Chin's question, what is it about resolving this case at any level that would entangle the federal judiciary into the, uh, this church's internal deliberations about whether or not he should be a bishop? At bottom, your honor, submitting this case to discovery would require the church to submit its process of church discipline and election of a clergy. No, but he's not, he's not trying to reverse the discipline. He's just saying I was defamed because someone suggested, someone said that I forged a letter. Your honor, the only, the, the only legal effect of that Ford that supposedly forged letter is in Canon law. So for this court to determine whether that letter was forged or not is to override the judgment of the church. And here it's easier because you're saying this as a canonical matter, that the idea of forgery is a canonical matter that we can understand or that we shouldn't delve into. Under any definition of forgery, you have to determine whether the letter was authorized to go to Moscow. I can think of a number of reasons why the metropolitan signature could have been on that letter that he, and he did not authorize it. We're far afield, I think from the, well, maybe not that far afield from the appellate jurisdiction, but you know, have we ever recognized, um, what I think you're, uh, asking for in connection with the collateral order doctrine, uh, in circumstances, even remotely close to this. The court has recognized, recognized first amendment protections as immunities and liberty synergistics and United States versus Thomas. So there are first amendment protections that are immunities, uh, two other circuits have recognized, uh, the church autonomy doctrine as a collateral order appeal, uh, available for collateral order appeal. Um, there's two substantial public. The other concern I have is this is occurring in the context of a 12 B motion on the pleadings. I mean, isn't it plausible that the case can be resolved, uh, based on neutral principles? I mean, it, this doesn't mean that the church autonomy doctrine can't be invoked at some point, but the question is whether it, it, it, it should be invoked at this point. Once this case goes to discovery that, so the district court held that, uh, the claims raised purely secular issues that could be resolved by neutral principles of law. Uh, there's no, uh, factual question about the fact that this is, it's based on an ecclesiastical communication, but whether he was correctly alleged to be a Bishop, he's asking the court to decide whether or not the election occurred, uh, your honor, the, um, the district court held that the issues at the questions at issue were the ministerial exception and the church autonomy doctrine, and that it could apply, uh, it could apply neutral principles of law. So it's only a question of law to be decided on appeal. And so why can't discovery be limited to that? So not even the amicus. So I read professor McConnell, professor Laycock, two experts, and not even they, as I understand it, say that discovery, uh, in the context of a, an assertion of ministerial exception is a foreclosed altogether. It's just about timing. It's not foreclosed altogether, your honor. And many courts do bifurcate discovery to determine factual questions on a motion to dismiss. So, uh, if the, if there's a question about whether there's the person is actually a minister, if there's a question about whether the church autonomy doctrine applies, but the court below did not identify any fact issues. Uh, and the, the Laycock McConnell brief, your honor, did say that on a motion to dismiss, if church autonomy doctrine is denied, then it should be appealable. And that is what we have here. Isn't the issue not so much a factual issue about whether he's a minister or not, but a question of, is there a path for this claim that doesn't bump into all these walls that you're predicting it will bump into? And don't we kind of have to let discovery unfold and the objections arise and the rulings happen before we're situated to, to answer that question? We can tell from the base of the complaint that this is a claim brought by clergy against his church in a, in a claim that interferes with the clergy church relationship. He is asking this court to punish the church for what it said about him. Uh, and those, that is, he's asking for questions, he's asking the court to answer questions that go to his religious status. And I would like to reserve some of my time for rebuttal if I may. Well, let me give you a hypothetical. Let's just say here that in this case, uh, the church, uh, without any foundation accuses, uh, Mr. Belia, uh, Bishop Belia, uh, uh, of something that is obviously untrue and without reference to a canonical law or anything else. Would he have a claim, uh, for defamation that could proceed? And so my overall question is, is there any claim for defamation that involves a minister, just say that the ministerial exception applies, that involves a minister against his or her church? Usually the ministerial exception is going to apply when you have a claim brought by a minister against his church, if it interferes with the clergy church relationship. When you say if that's the crux of it, if it interferes with the, uh, church minister relationship, is there any claim of defamation that you would concede, uh, could proceed notwithstanding the assertion of the minister exception? A claim of defamation that had nothing to do with the ministerial, with, with his ministerial role. Uh, your honor, there's, there's a possibility that that could happen, uh, but that's not this case. This is a Hartland case where he's asking the court to look at this, these canonical letters and to authorize them. Uh, he, uh, he's the only damages that he's, he, the only real damages that he has claimed are loss of donations from his church, loss of membership from his church. The third circuit sort of addressed that in the sixth Mount Zion case and said it would create impermissible entanglement for us to determine why people left the church to give a, give a judgment. If what you were saying is true, then would you make sense of two cases for me? One is Herx, which is judge Sykes's case from the seventh circuit. I shouldn't say the seventh circuits case authored by judge Sykes. Uh, and the second is the recent, um, decision by the Supreme court not to review the Supreme court of Massachusetts, uh, uh, decision. The Herx case, your honor, did not involve a ministerial exception case. It did affirm the McCarthy decision, which dealt with the religious question. Like we have, like we have here, uh, that was primarily a title seven lawsuit. And, uh, it just goes to show that the immunity is not absolute. There are cases where churches are subject to a civil, civil suit, uh, but not in the ministerial exception case, uh, your honor. And then, uh, the Gordon college case, we, we filed our response to the, um, to the plaintiff's 28 J on that, but that was, that was, uh, uh, the Supreme court said, this is something that would complicate jurisdiction, which, uh, ordinarily applies many of the same principles that we consider, uh, in the context of a collateral order doctrine. I think the primary principles there involved, uh, the, the fact that it came from a state court and those slightly different context of the Cox decision, the state court Cox decision about whether or not the claim will ever be able to be heard because as a federal claim coming from state court, but your honor, the point there is that the Supreme court was interested in determining and hearing the question of whether the person was a minister or not, uh, in hearing ministerial exception cases. But it just, it declined jurisdiction on that one because it wasn't as clearly present. But here you have a priest suing his church, asking this court to determine, uh, a question of internal church discipline to, to ask the, um, ask what the metropolitan knew about his church discipline, about the election, uh, whether or not he communicated with Moscow, it would require you to depose the metropolitan about what he was thinking and what he said to other clergy, uh, to do that would just on the merits of this, of this case would cause irreparable harm. Can I ask a sort of a hypothetical in a different range, but it seems like your position is that anything that could potentially get the leader deposed and ask about their thinking is, is hits this wall. And I'm, I'm thinking about the context of the, of the spate of, um, sex abuse cases in churches and, um, brought by third parties against church leaders for, um, allegedly allowing people that they knew, um, to, to have engaged in unlawful conduct, uh, to, to stay on or, and, and very much matters of, uh, what we would call the ministerial exception if we were dealing with a title seven case or something brought by those people, um, is it your position that, uh, because those cases involve an inquiry into the knowledge and decision-making of the church authorities that a complaint basically needs to be dismissed right out of the blocks? No, Your Honor, the church autonomy doctrine does not insulate any priests or clergy from any depositions. Uh, there are questions that they, that might be, that might be good for deposition. Um, and in the sex abuse context, uh, that there's never a case where the church is immune from, uh, the sex abuse claims, the church autonomy doctrine does not apply to crimes. Uh, so in those, in those situations, you wouldn't be, it wouldn't be a problem. So it's the criminal nature of the conduct. So if there was a civil claim for conduct, uh, that wasn't criminal, that would be essentially that, that, that, that, that a church authority allowed to continue, that would be barred by the church autonomy doctrine. It depends what the conduct is, Your Honor. Hosanna Tabor said that, uh, the church autonomy doctrine, the ministerial exception does not apply to, uh, um, outward substantive acts. So, uh, if it's a, if there's a battery or a case of sex abuse, that even a civil claim could proceed. But defamation's an outward act. Not when it's based on religious, not when there's a religious question in the case. This is, you know, this is a written letter from clergy to church leadership asking for discipline of this minister. Uh, it's, it's, uh, it's part of the internal church process. It's, uh, it's, um. What, what I'm struggling with either, they're the cases where the letters are saying, uh, this person doesn't comply with our canonical requirements. They're not a good minister, things like that. And I totally understand the entanglement that would immediately create, I'm, I'm trying to understand how forgery is sort of a uniquely canonical concept that requires getting inside the church's inner workings. Well, you, here you have the highest church authority, Metropolitan Hilarion. Uh, the, the complaint says that he was a key and willing participant in the clergy letter. So you, he's the highest, uh, he's the highest church authority, and he has already, by placing Father Alexander under investigation, instead of contradicting the clergy letter, he's made a determination about what that letter, whether that letter was authentic or not, whether it was authorized or not. So to, to determine whether or not there was a forgery, whether or not his signature was on it, is to overturn the judgment of the, of the church. Isn't that a, so, so I'm confused. This is my confusion. Any lawyer could ask a series of questions about, uh, whether the, uh, letter was in fact forged, that it seems to me would not involve getting into any canonical law or into the thought processes that, um, relate to whether or not Mr. Uh, Mr. Velia should be a, a bishop. But you'd still have to have Metropolitan Hilarion showing up in, at a deposition. You'd be turning over internal church documents to a, a schismatic priest. You'd have him showing up to a deposition and answering questions about the process, um, about his... About what, what process? About the process of how you elect, whether the bishop was elected or not, that the... Well, we know that. He's not disputing that he's not elected. Yes, he is. He, I think that the, well, the defamation claim says, this, I was accused of forging a letter. I did not. I want damages for, uh, uh, for defamation. On Joint Appendix, uh, 100, the, that is the amended complaint, paragraph 66B. He lists the def, the, the defamatory statements. And one of them is the content of the letter about whether or not the election occurred was defamatory. So that is squarely before the court. And this church has to defend that, uh, it would, it would require the ministers to defend it in deposition and it would require them to talk about... What page is that? Uh, Joint Appendix 100, paragraph 66B. Um, and then, uh, Joint Appendix 97 talks about what the, the, whether or not the election occurred. Uh, was it one of the defamatory, one of the statements that defamed him? And the, uh, district court said that that was one of the facts that it could determine whether or not the election occurred. Well, it's a slightly more nuanced allegation, right? The, the, the allegation is that he fabricated the assertion of whether or not the election occurred. It's, it's less about whether or not there was an election and more about whether, uh, the plaintiff, uh, fabricated, or am I misunderstanding that? The clergy letter said the election was non-existent. Uh, and to the extent that he, that that's contradicted in the complaint, the, the letter controls. I see. Okay. Well, we've kept you, uh, past your time, but you have reserved some time for rebuttal. So we'll hear from, uh, your, your friend on the other side. Thank you. May it please the court. Bradley Gerard for Appellee Alexander Belia. The threshold question and the dispositive one is whether this court has jurisdiction. Defendants appeal three distinct orders from the district court. And in doing so, ask this court to create three new categories of interlocutory appeals as of right. Each is novel and none satisfy Cohen. I'll address all three in turn, but first a reason why all three fail. The Supreme court and this circuit have recognized that the Cohen doctrine must remain selective and narrow. And all, but the most extraordinary circumstances, new categories should be made by rulemaking, not through a specific case. And when a specific case demands an immediate appeal, there are procedures for that, including writs of mandamus. Defendants did not bother to seek a writ of mandamus here. Instead, defendants asked this court to create a sweeping new rule of appellate jurisdiction. But when determining, when determining, if creating an entirely new category of civil appeal is appropriate, this court's cases fall into two buckets. First, does the right involve a government actor or implicate the effective functioning of the government? Second, if it's litigation between private parties, is there an explicit statutory or constitutional right that by its terms gives an immediate right to appeal? There's no government actor here. So we look to the text of the first amendment. There's nothing explicit in the first amendment that by its terms gives an immediate right to appeal, that it is a right to be free from proceedings at all. And the defendants don't say anything different. Now compare that to double jeopardy, the speech and debate clauses, those give an immediate, those give a right to be free from the burdens of litigation itself. Uh, the first amendment does nothing like that. I'm having a hard time mentally completely pulling apart the threshold question from the merits. And the reason is that I, I ask myself if they are right, that taking one more micro step in this case beyond the complaint to open any discovery would in fact impermissibly entangle the courts and the government with the operations of the church. Wouldn't that be something that should be immediately appealable? Well, Your Honor, that would require seeing and interpreting the first amendment right as being different from how both the Supreme court and courts historically have, have interpreted that right. So if you look at, to start off with the ecclesiastical abstention right, it is not a right to be free from proceedings. It is not a right to be free generally from discovery. Going back 150 years to Watson, the Supreme court has made clear and has continued to make clear, including through Serbian Eastern Orthodox diocese. And this is also the basis of the seventh circuit's decision in McCarthy, that courts cannot answer purely religious questions. So when there is a purely religious question, the courts have to accept the religious answer to that question. They are not allowed to answer it themselves. Now it doesn't mean that the trial or that the proceedings have to stop. It just means that the courts themselves cannot wade into that question. There is no such question that has been presented here. And you have to remember that under Cohen, we're creating categories of appeals, right? So this isn't whether this case is close. The facts of this case don't matter. If the court has decided that there is Cohen jurisdiction here, it will end up deciding that there is an immediate right to appeal the denial of a motion to dismiss on the basis of the ecclesiastical abstention doctrine, on the basis of the ministerial exception, even when it hasn't been properly presented to the court and the hypothetical discovery orders. The ecclesiastical abstention is a form of immunity akin to qualified immunity. And we can do interlocutory appeals at times. Why doesn't that apply here or that those principles? Well, Your Honor, at the outset, I'd point the court to what Judge Sykes said in Herx, which is, you know, courts sometimes loosely use the terms immunity or absolute, and it's not really the case when it comes to ecclesiastical abstention. You have to look at the real thrust of the right. And as I said, going back 150 years to Supreme Court, I said nothing about this being an immunity from suit. It's saying that the courts just can't decide these questions. This isn't like qualified immunity for one particular reason, which is that qualified immunity, the court in Mohawk and since has made very clear, is just a totally different animal. It is unique in that it's private parties and there's an inexplicit right, and it has cabined the right to just qualified immunity. So qualified immunity is nothing different. And looking at the two buckets of cases that I mentioned earlier, qualified immunity implicates the effective functioning of the government. And so something that, you know, Judge Sykes also mentioned in Herx, when you're talking about qualified immunity, there is a real practical consideration. There has to be an immediate appeal because if the government agents could be hailed into court, it would actually slow the government down. It would grind the effective functioning of the government to a halt. So as I understand it, the argument is that we should apply the same deterrent rationale to the ministerial exception, to the ecclesiastical abstention and so on. In other words, that if we don't do this and we allow cases to proceed, that will chill different churches, different other religious organizations from engaging in their faith. Well, so categorically, that's not too different from what you're describing as the rationale for immunity in the governmental context. Well, Your Honor, the Supreme Court has made very clear that that sort of categorization of rights should be avoided. That's something being viewed as a or argued as a right to be free from the burdens of trial should be viewed with a skeptical, if not a jaundiced eye. And if you look at what the court said in Mohawk, the court said, yes, look, we recognize that the attorney client privilege is an important interest and that not giving an immediate right under Cohen to appeal might actually affect that interest a bit. But 1291 is the statutory limit on this court's jurisdiction. We have to take that very seriously. And in the rare instance that a district court gets it so wrong, there's a writ of mandamus. In the rare instance that this presents a really tough legal question, there's 1292B. There are these safety valves. Again, to conclude that there's jurisdiction here would be to create three entirely new orders of category or categories of appealable orders as of right. That means that no matter how close the facts may or may not seem, there is a right to come straight to the court, which would grind the proceedings in the district court to a halt. It would just step on the toes of the district court left and right, saying that every potential discovery order, every denial of a motion to dismiss is something that is immediately appealable. It's asking this court to just breathe down the necks of the district court when there's no reason. And if you look at this case, again, this is categorical, but looking at this case just proves the reason why. The court merely said, look, at this point in the proceedings, I will not answer religious questions. The court cannot do that. I recognize it. But viewing all of the facts and the allegations and the complaint in a light most favorable to the plaintiff, there aren't religious questions. This can conceivably go forward. Now we'll go forward. And if religious questions do arise, I won't answer them. He made very clear in his opinions that that was the case. This isn't a judge who thinks that he has the right to answer the answer, the ecclesiastical questions. That's just not the case here. And again, this is a categorical rule, but looking at this record shows precisely why it doesn't present the problems that the defendants insist it does. In order to prevail in a defamation claim, I completely understand your argument that whether or not this was forged doesn't require a canonical interpretation, but in order to prove his claim, I think your client's also going to have to identify amongst this mix of named defendants who said what, when, to whom, who knew what, when, what were the conversations that happened, what did Hilarion Metropolitan know when, and then to prove damages, you're going to have to show that any lost revenues, I guess for want of a better term, are due not to the fact of being removed from the position, but are due to these allegedly defamatory statements. How do you do all of those things? Like, just describe for me what the path might look like from here to the other end of that, that doesn't bump into these walls. Well, Your Honor, the path is the same as any path in a district court case, right? The case should proceed apace. And if one of these questions comes up, then the district court doesn't have the ability to answer it. And the district court recognized that. So the question of damages, first off at the outset, we very much disagree with the defendants that the only damages are for loss of standing in the religious community. There are general damages under defamation per se claims, including the mental anguish and all of the suffering of being publicly and broadly called a liar and a forger and a fraud. And as these cases, as the claim goes forward, Belia will, at some point, if he prevails on the merits, have to, he'll have to make a showing of damages. And if the showing of damages, which is his burden, if it implicates actual religious questions, the district court has already said, that's a no-go. I won't answer those. And so if those come up, then they'll be dealt with as they, as they come up. And there is no reason to have such little faith in the district court to think that the district court won't recognize that it has multiple times already said, yes, I will recognize that. And I won't do that. What about the, what about this other aspect though? You've got to figure out who said what, who knew what, et cetera. That sounds an awful lot like you're going to end up deposing a lot of individuals who made the comments in the context of these debates about his, your client's position within the church. How do you do that without getting to a place where we don't want the courts to be? Well, the ecclesiastical abstention doctrine is not a right to be overall free from any discovery. So there will be, again, a limit on the discovery that when that comes up, the district court can address it. In many instances, this court recognizes that the district court is the court that's in charge of discovery. Uh, and there's no reason again, to believe that the district courts will just be rubber stamping every single request that is made by the party here. Uh, what has been, what has been said is yes, we can go forward with it, but there aren't even any particular discovery orders that defendants are pointing to. They're just saying, hypothetically, there could be this problem in the future. And what Belia has said time and again, is that, look, I'm not questioning whether I was elected as a Bishop. I am not looking to make any religious determination. Although, although your, your adversary points to page a hundred and a hundred and one, I think of the appendix and says that at least some of the allegations implicate precisely that. Well, your honor, I think that's only if you can, if you read the complaint in a light favorable to the defendants and as opposed to a light favorable to Belia, if you In his allegations, he was called by Hilarion, said, we want to push it, put you up as the Bishop. There was the election. Then Hilarion wrote multiple letters saying, you, uh, you have been elected. We're going to kind of go through some of these internal processes, but we're on the track. After Moscow approved it, Hilarion calls Belia and says, Hey, congratulations, you've gotten a position. And then the September 3rd letter comes along and says Hilarion quote, knew nothing about any of this. Now that's not something that will require any sort of question of religious doctrine. It's just the question of, wait a second, you said that I was elected. You wrote these letters and in the September 3rd letter, you said you knew nothing of it. Any reasonable reading of that by anybody would, would get to exactly what Belia claims that he's being called. You could get into whether those things happened without inquiring as to why, I suppose. Yes, Your Honor. I think that. An objection at that point as to why in the mental processes, but as to whether those things happened, it seems to me that might be different. Yes, Your Honor. That is exactly right. And that's what the district court said. The district court said at the moment, reading the complaint in a light favorable to Belia, all that I have to ask is, did this happen? Did an election happen? Now you could imagine a world in which the defendants say, okay, yes, the election happened. We, I was lying about that. But there's other legal grounds by which you lose this case. And that is a bridge that we can cross when we get to it. But to say at this point, it necessarily requires wading into religious doctrine and deciding religious questions is to assume the defendant's telling of the facts and the defendant's spinning of this as a purely ecclesiastical battle. Right. What Belia has said is, no, this is not me as a bishop. This is about me as a person who is publicly and told across the world to be a forger. Now, just to put a kind of practical point on it, if you can imagine, say Belia decides he doesn't want to be in the priesthood anymore and wants to go get a job as a bank teller. He has information about him out there on the internet that calls him a forger and a fraud, right? He should be able to get some recompense for something that was not church related. He was just called a liar. I see that my time is well up. Um, just to go back to the appellate jurisdiction issue is there, and I understood your arguments against why, uh, uh, we shouldn't expand, um, as a really statutory matter, um, uh, the collateral order doctrine, uh, to apply here, but are there any other jurisprudential concerns that you've identified or that you've, you can identify for us for why we wouldn't want to expand it here? You know, we've got these amicus priests that make some compelling, uh, arguably compelling arguments for expanding the doctrine understanding. Um, as I think you pointed out, as I think we agree, uh, or the both sides agree that, um, we're, you know, that's not quite the state of the law now, but are there any other concerns that you have? Yes, Your Honor. And I can, um, I can go to some of the specific Cohen factors that I think really highlight the concerns. Uh, the first is that something has to be conclusively decided. This court is a court of review. It is not a court of first view. None of the issues here were conclusively decided. So, uh, jurisprudentially this court would be, uh, wading into again, the district court's bailiwick. And that's something that we can, we can read a complaint. So I took, uh, Ms. Thompson's point, uh, which is that, and I think the amicus, one amicus briefs makes, uh, uh, brief makes the same point that if the complaint is plain on its face, that the ministerial exception applies, then, um, we ought to be able to review that. No, Your Honor. I don't think that's right. And I, again, why not point the court to the three Cohen factors for the ministerial exception order. So, uh, first the issue isn't before the court at all. It wasn't briefed. It wasn't raised below. It wasn't decided below. Um, when you say the issue, what is that? It's a ministerial exception. Uh, it is a, now, now the defendants say, well, because we raised ecclesiastical abstention, we necessarily also raised the ministerial exception. And that can't be right. It's a distinct legal doctrine with a distinct legal test and distinct legal remedies. The most that defendants can point to in the record is the opinion denying the motion to dismiss in which the district court had a see also cite to Hosanna Tidworth. That's it. Um, they never raised it, never cited it in their motions to dismiss. Um, and a kind of a bigger point, and this gets to the jurisprudential point as well, defendants strategically choose when and how to raise affirmative defenses. That's part of litigation. It would be unfair to defendants for this court to say that the district court has a responsibility to decide defenses that were never raised, never briefed, it would be unfair to the district court and it'd be unfair to plaintiffs as well, who never had a chance to brief the issue and make the argument for the district court. So this court shouldn't decide these issues in the first go round. And then I don't understand the unfairness if it's de novo review. And, and does the district court have some advantage in reviewing a complaint over, uh, over this court? Well, no, your honor. But I think that this court has, you know, the courts of appeals have a court of review, not a court of first view. And so, so coming up with something that has, you know, a full briefing, full consideration of the arguments and a reasoned decision for this court to review is a benefit not only for this court, uh, but for the parties as well. And in any event, it fails all three Cohen factors. It can't be conclusively determined when it was never decided by the district court. Uh, it's not separate from the merits. As our brief explains the questions about whether someone is a minister often involve what, or, you know, uh, very much involved what that person did. That is very often tied up with the merits of any specific claim. Um, and the, the question of the ministerial exception as Deweese Boyd's denial shows as well, it's effectively reviewable on an appeal from a final judgment. The right is to choose your minister. And if the court ultimately, that's certainly suggested by the Supreme court's recent, uh, denial of review and the Massachusetts case. Um, okay. Any further, if there are no further questions, this court should dismiss for lack of jurisdiction. Thank you. It's Thompson. Thank you, your honor. A few points. This court and Fratello said that courts are ill-equipped to decide whether and to what extent an employment dispute between a minister and his or her religious group is premised on religious grounds as the case is the same here. It's not an employment dispute, but it is a dispute. I believe that I was on Fratello. I was on the panel on Fratello. That is a very different case. If, if Fratello had brought a defamation claim, it would be the same situation as this case here, your honor. There's that, that was a case of whether or not she was correctly terminated. And this is a case of whether or not he was correctly terminated based on what the church said about him in his, in, as he was terminated. So, so the, again, we go back to the framing of the issue. And, uh, I suppose that, uh, each side will have an opportunity to further frame the issue, but you frame it as, you know, whether he was wrongly or rightly elected, whether he should have been elected, he frames it, as I understand it, as, uh, is it, was I defamed that is, was the statement that I forged this letter, uh, a knowing false statement for which I am entitled to some damages. I'm not trying to undo the final decision. And so if you frame it in that way, in a way favorable to Belia, um, how, how can we, how can we help you? Under any understanding of framing, you have to determine whether or not the letter was authorized by the highest church authority, that's what the clergy letter was saying was that we know that this is not, this couldn't have been authorized and to, to make that determination, you'd have to have a church authority on that question. Is there any circuit case that holds that the church autonomy defense, uh, falls within the collateral order doctrine for purposes of, uh, for appellate jurisdiction? Yes. The Whole Woman's Health case in the Fifth Circuit and the McCarthy case in the, uh, in the Seventh Circuit. Whole Woman's Health is more on point here because it involves, uh, a discovery, whether or not the court can dig into discovery and, uh, uh, it said there are courts of limited ability to assess the strength of religious groups, groups, claims about their internal deliberations for purposes of monitoring discovery. So very similar to what this court said in Fratello, that's, uh, 896 F3rd at 368. Uh, Thank you. We'll, we'll take a look at them. On the question of whether, uh, whether this is separate from the merits, your question, Judge Robinson, uh, the Supreme Court and this court have said that if there's an immunity that applies, that is a question of law that is separate from the merits, determining whether or not the immunity applies. So the district, so the district court did say, uh, the, the question is whether the factual situation presented fits into the ministerial exception or the ecclesiastical abstention. Um, and that also goes to waiver, Your Honors. Uh, because it's, it's, you go ahead. Well, you just, you end up chasing your tail a little bit though, because whether the immunity applies really requires you to analyze the merits of the question of whether this complaint on its face does in fact breach the wall, right? The question of whether the church autonomy doctrine applies to the facts is separate from whether there was defamation. So, uh, if the, if the religion clauses provide an immunity and the Supreme Court has, has, uh, talked about that in the Milivojevich case, they said it was impermissible for the lower courts to go through the proceedings of the defrocking of a bishop, uh, in the NLRB versus Catholic bishop, uh, case and the Supreme Court said that the very process of inquiry can infringe. Uh, so if you have, if you have that, you have the immunity and the district court said that it does not apply, that it can determine, it can use neutral principles of law to, to move forward with the case on the merits. That was a denial of the immunity. And that's a separate question of law that this court can decide. So Mr. Girard, uh, pointed out that, um, uh, there was no, uh, at least, uh, on this record, reference to the ministerial exception, there was only a reference to the ecclesiastical abstention doctrine. Is that correct? First of all, and then if it is correct, if he is correct about that, then what are we to make of your arguments today in front of us? In the initial motion to dismiss, we did cite the Goodman case, which is a ministerial exception decision. Uh, and we, we bring to extensively, uh, plaintiff had a case. You cited a case, but did you rely explicitly on the ministerial exception? I use the words ministerial exception, but the Our Lady says that the ministerial exception is a doctrine within the church autonomy, the broader church autonomy doctrine. Uh, that was the Our Lady of Guadalupe case. And, uh, there's no prejudice here because the plaintiff did have multiple opportunities below to respond to our ministerial exception arguments on the motion to reconsider and, uh, in the denial of the motion to bifurcate and stay, uh, and he raised it for the first time in his initial briefing on the motion to dismiss this appeal in this court. So, uh, there's no prejudice. And finally, even if, uh, even if this court does think that it wasn't, it wasn't raised, uh, three circuits at least have decided that because it's the First Amendment bars the government from entangling itself in these kinds of ministerial questions, it's not waivable. And that's the, uh, Sixth Circuit in Conlon, the Seventh Circuit in the Tomich case and the Third Circuit in the Six Mount Zion case. Do you agree, do you agree just to pick up on something that, um, Judge Chin asked that at least with respect to the Second Circuit, let's start there. Um, you were asking for something new with respect to the collateral order doctrine in our case law relating to Cohen. Applying the Cohen factors shows that the, that the collateral order doctrine does allow an interlocutory appeal under church autonomy doctrine. So this court does not recognize church autonomy yet. Um, but it is, uh, that was something that was... And, okay, do you also agree that we have said over and over and over again, that we need to be extremely cautious about expanding the Cohen doctrine and the collateral order doctrine? Yes. Yes, Your Honor. And how do you square those two things? Uh, Your Honor, I, this is not an expansion. It's an application. So if, if, if, and this court has said multiple times... Well, we've never even described the religion clause, uh, uh, cases as involving an immunity per se. Uh, this, multiple courts have, have, have looked at the religion clause questions as, as like qualified immunities. The 10th circuit has said that in the Bryce case, um, the, uh, and four state courts of last resort have, have held that, uh, and then you have the 5th and 7th circuits, uh, applying the church autonomy doctrine in a collateral order appeal. Uh, so there, there is precedent for that, Your Honor. And this court has recognized that, uh, for, in the Liberty Synergistics case, this court said that an immunity-like protection that would eligible under the collateral order doctrine. Uh, and that's what, this is even stronger here because you have the structural, uh, entanglement problem with the court getting involved in. Wouldn't it be an easier rule to require at least, uh, a specific reference to the ministerial exception? Understanding that there was a reference to the abstention doctrine, but here really, I think we're focused on the, the ministerial exception and then, you know, uh, defense based on that, uh, then maybe, uh, you have, um, you get to, to have a review from our court. Uh, Your Honor, if that's the rule that, you know, in the three pages that we had to, in our motion to dismiss, including a number of issues outside of the church autonomy doctrine. But you're telling me that the crux, today you were telling me, Ms. Thompson, that the crux of your argument is a ministerial exception. The principles are the same, whether you're applying the ministerial exception or the church autonomy doctrines. The principle is you have a lawsuit by clergy against his church. And the question is whether or not the court can get involved in that. So, uh, even if you're just looking at the, at church autonomy doctrine, uh, if the questions are the same, does this interfere with internal church governance and, uh, the answer is the same, yes. So if the court doesn't want to apply the ministerial exception, it still has to consider the same considerations, whether or not the, whether or not it interferes with the clergy church relationship. Uh, and that's what, that's what submitting to discovery would, would require. Um, on the, on the chilling point, Your Honor, I mean, the public interest in this, in this case is allowing churches to be transparent about allegations of abuse by a clergy. Uh, this is a situation where the, when, when there's a new bishop in the church, uh, it's important for, uh, that meant that matters for the whole church, uh, because the new bishop becomes part of the Sobor, the governing body of the church, and you want the church to be able to speak about what the, uh, any problems or any, uh, the fact that he wasn't elected, you want the church to be able to speak about that. And that's a, that's a transparency concern that you want that. But, um, but that, that's, that's a little bit of an expansion of the ministerial exception as it's thus far been recognized, right? You're saying not only do you want the church to be able to pick who it wants, but you want the church to be able to say to the flock, whatever it wants relative to that choice. Uh, so our lady of Guadalupe said that it's the church's role. It's the, it's the, um, it's the church's province to determine, uh, selection, supervision, and removal of its own clergy. So to, to limit what the church can say about in that area, yes, it would, uh, it would prevent the church from, from carrying out those core functions. So you, you, two questions, at least, uh, from my part. Do you agree that there is no general immunity that religious institutions, uh, enjoy from, uh, secular laws? No, Your Honor, there's no general immunity. This is a, this is very much like a qualified immunity. Okay. And the second question is you heard Mr. Gerard talk about the writ of mandamus as a possible avenue. First, you agree that that was available, uh, in this case. And second, if it was available, if you agree with that, then, uh, why wasn't that pursued? A writ of mandamus is only available if there's no other remedy available. That's part of the standard. And because a collateral order reduction appeal had not been, uh, foreclosed by this court and because it's supported by the precedent, uh, we, that, that was the, that was the route that we took. It was available. If this court says that a collateral order appeal is not available, then, uh, we will have, mandamus will be an option, but, uh, where it was available. Um, the religion clauses do not allow civil courts to probe the mind of the Mr. Alexander is asking this court to do here. Uh, this court should find that it has jurisdiction over this appeal and unless the court has any other questions, uh, it should order that the complaint be dismissed. Thank you very, very much. We'll reserve decision.